IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br> )<br>v.            )     Criminal No. 4:25CR40<br> )<br> )<br>XAVIER STAFFORD,      )<br>    Defendant.     ) | |

**POSITION WITH RESPECT TO SENTENCING FACTORS**

COMES NOW the defendant, Xavier Stafford, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the *Sentencing Guidelines and Policy Statements* as well as this Court's Sentencing Procedure Order, and hereby represents that he has reviewed the United States Probation Officer's Presentence Investigation Report ("PSR") and he has no outstanding objections to the Report. Accordingly, he respectfully states his position with respect to the sentencing factors.

I.  **Overview of Sentencing Request**

During what can only be described as a perfect storm of unfortunate life circumstances, Mr. Stafford found himself homeless and estranged from his family when he engaged in disturbing criminal behavior that has forever negatively impacted the victim and his family. Mr. Stafford has pled guilty and accepted full responsibility for his disturbing criminal behavior. Mr. Stafford is in need of treatment and therapy to deal with documented mental health issues. If he gets the treatment and counseling that he needs now, he will be able to stabilize his behavior and move forward without issue. Despite the wrongfulness of his actions—for which he readily accepts responsibility—neither Mr. Stafford nor society will benefit from the imposition of an extended prison term. He may need treatment, counseling, and supervision, but he certainly does not need

1

an extensive period of imprisonment. A sentence of sixty months to be followed by three years of Supervised Release would adequately promote respect for the law and reflect the seriousness of his offense and would best aid his future success under the supervision of this Honorable Court.

### II.     Nature and Circumstances of the Offense

The stipulated Statement of Facts as reproduced in paragraph six of the Presentence Investigation Report sufficiently sets forth the offense conduct in support of Mr. Stafford's guilty plea. Moreover, Mr. Stafford not only timely notified the Government of his intention to plead guilty but also clearly demonstrated acceptance of responsibility for his criminal behavior. Most importantly, he is looking forward to receiving the treatment that he needs to help him be successful in his next chapter of life.

### III.    Mr. Stafford's History & Characteristics

#### A.  *Mr. Stafford's Upbringing*

Mr. Stafford was raised by his mother and family and appears to have been provided life's basic necessities during his childhood and formative years.  The son of military parents, Mr. Stafford struggled with frequent moves due to military orders.  PSR ¶ 39.  Mr. Stafford was often bullied and frequently felt isolated during his teenage years.  *Id*.  Despite his criminal behavior and federal prosecution, Mr. Stafford enjoys a good relationship with his family, and they remain supportive of him. In fact, "Stafford noted that both of his parents fully support him and advised that their relationship is 'better than ever.'"  PSR ¶ 37. This is important to note because at the time of the offense, Mr. Stafford was homeless, living out of a van, and estranged from his family.  PSR ¶ 41. Notably, his family's support is documented in character letters, which will be attached as exhibits to Mr. Stafford's position on sentencing.

**IV.     The Appropriate and Requested Sentence**

There is no doubt that the offenses that Mr. Stafford committed are serious and deserving of punishment. He is facing a mandatory minimum sentence of sixty months in prison for a reason. Yet, as explained below, this mandatory minimum of sixty months would sufficiently comply with the mandate of 18 U.S.C. § 3553(a). Accordingly, Mr. Stafford respectfully requests that this Honorable Court impose a sentence that does not exceed sixty months, to be followed by a period of three years of Supervised Release.

*First*, although this would represent a downward variance from his advisory range, sixty months would be sufficient, but not greater than necessary considering that Mr. Stafford has no prior criminal record, he was only twenty-one (21) years of age at the time of the offense, and he clearly had little to no support at the time of the criminal behavior.

*Second*, Mr. Stafford's history and characteristics weigh in favor of the mandatory-minimum sentence. He has no prior criminal record, and he has never been accused or engaged in any inappropriate behavior with young people.

*Third*, the innumerable collateral consequences of this offense will serve as additional measures of deterrence and retribution for his actions. As a consequence of his guilty plea to this offense, Mr. Stafford will be a convicted federal felon. Additionally, he will be supervised, and prevented from working in many fields of employment. His life will be changed forever. More punishment would merely be destructive, wasteful, and simply unnecessary. For this reason, he respectfully requests that the collateral consequences be considered in his overall punishment.

*Finally*, the sentence requested will allow Mr. Stafford to receive much needed mental health and sex offender treatment. Mr. Stafford acknowledges his need for such treatment, as well as his openness to receiving it.

Given his history and the nature and circumstances of the offense, sixty months in prison, followed by three years of Supervised Release, is more than sufficient to achieve just punishment and ensure that he never commits this offense, or any other, again.

### A. *More than sixty months of incarceration would be greater than necessary to achieve specific deterrence, to protect the public, and to reflect the seriousness of the crime.*

A prolonged prison sentence is not necessary to protect the public from any future crimes by Mr. Stafford. In a study on recidivism by the Sentencing Commission, only 1.8% of non-production child pornography offenders recidivated by committing a contact sex offense. *Report*, 298-300. Furthermore, only 1.4% of offenders recidivated by committing another child pornography offense. *Id*. These rates are significantly lower than the average recidivism rates for other federal offenses like drug trafficking crimes (30.8% reconviction rate) or firearm offenses (47.5% reconviction rate).[1]

The Sentencing Commission's data on recidivism for child pornography offenders is consistent with existing "[e]mpirical literature," which "generally concludes that there is little—if any—evidence of a direct correlation between viewing child pornography and the viewer's commission of 'contact' sexual offenses."[2] Moreover, a prolonged prison sentence cannot be justified on specific deterrence grounds. Lengthier prison sentences do not achieve better recidivism rates. Empirical studies have repeatedly confirmed this.[3] With respect to sex offenses,

---

[1] U.S. Sent'g Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview*, at A-2 (2016), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

[2] *United States v. Marshall*, 870 F. Supp. 2d 489, 492 (N.D. Ohio 2012), *aff'd*, 736 F.3d 492 (6th Cir. 2013); *see also* Jérôme Endrass et al., *The Consumption of Internet Child Pornography and Violent Sex Offending*, 9 BMC Psychiatry 43 (2009) (study that followed 231 child pornography offenders for six years after initial offenses found that only two offenders (0.8%) committed a contact offense, and only nine offenders (3.9%) committed a non-contact sexual offense).

[3] *See generally* Marc Mauer, *Long-Term Sentences: Time to Reconsider the Scale of Punishment*, 87:1 UMKC L. Rev. 113, 123-24 (2018) ("The limited impact of extending sentence length becomes even more attenuated for long-term incarceration … If the length of a prison term has little deterrent value, it

individual studies and meta-analyses consistently find that "*incarceration has little, if any impact on recidivism*."[4] Indeed, not only is the little evidence in support of incarceration's deterrent effect "unimpressive," the Nunes study found that, "[c]ounterintuitively, some [sex] offenders may actually experience incarceration as *less* aversive than some alternative sanctions." *Id*. at 306. Even after assuming that risk of re-offense is a problem—which studies have shown it is not—more incarceration would do nothing to solve it.

18 U.S.C. § 3553(a) also requires this Honorable Court to impose a sentence sufficient, but not greater than necessary to achieve the purposes of sentencing: retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment"), and deterrence ("to protect the public from further crimes"). 18 U.S.C. § 3553(a)(2)(A), (C). To employ this sufficient-but-not-greater-than-necessary standard, this Honorable Court must be cognizant of factors outside the to-be-imposed prison term that advance the congressionally outlined sentencing objectives.

After he serves a sentence within the Bureau of Prisons, Mr. Stafford faces a term of federal supervision. Consequently, Mr. Stafford will continue to pay for this offense for the rest of his life, especially in light of his convicted felon status. As several courts have recognized, these collateral consequences of conviction are relevant to the "need" for the sentence imposed to reflect just punishment.

---

may be time to forego the rationale of 'sending a message.'"); Hilde Wermink et al., *Short-Term Effects of Imprisonment Length on Recidivism in the Netherlands*, 64 Crime & Delinquency 1057, 1082-83 (2017) ("For legal actors who take specific deterrence into account when deciding which sanction they will impose, it is important to know that longer terms of imprisonment do not necessary reduce recidivism in the first months after release.").

[4] Kevin L. Nunes et al., *Incarceration and Recidivism among Sexual Offenders*, 31 L. & Human Behav. 305, 314 (2007) (emphasis added).

Regarding the need for retribution, Mr. Stafford is fully aware that this Honorable Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment." 18 U.S.C. § 3553(a)(2)(A). Understanding that, Mr. Stafford respectfully submits that a sentence of sixty months achieves these goals as this sentence is punitive in nature and adequately addresses the seriousness of his criminal conduct, especially in light of the fact that Mr. Stafford has no prior criminal record and has never served an active period of incarceration.

Moreover, a sentence of sixty months is sufficient to achieve deterrence. Research indicates that increases in the *severity* of punishment are far less important for producing deterrence than the *certainty* of punishment (if severity is relevant at all).[5] Indeed, virtually no empirical data supports the theory that harsher (i.e. lengthier) sentences promote deterrence better than more lenient sentences. Professor Anthony Doob, a professor emeritus of criminology at the Centre for Criminology & Sociolegal Studies at the University of Toronto, reviewed the available literature on the impact of harsher sentences on deterrence. In this study, he asked and answered the following question:

> Can we conclude that variation in the severity of sentences would have differential (general) deterrent effects? Our reply is a resounding no. We could find no conclusive evidence that supports the hypothesis that harsher sentences reduce crime through the mechanism of general deterrence. Particularly given the significant body of literature from which this conclusion is based, the consistency of findings over time and space, and the multiple

---

[5] See Valerie Wright, Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment, The Sentencing Project, at 1 (Nov. 2010); see also Anthony N. Doob & Cheryl Marie Webster, Sentence Severity and Crime: Accepting the Null Hypothesis, 30 Crime & Just. 143, 187 (2003); Mirko Bagaric, A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals, 62 Buff. L. Rev. 1159, 1202-03 (2014); Sarah French Russell, Rethinking Recidivist Enhancements: The Role of Prior Drug Convictions in Federal Sentencing, 43 U.C. Davis L. Rev. 1135, 1187 (2010) ("Empirical data does not support the view that longer sentences actually promote specific or general deterrence[.]") (footnotes omitted).

>measures and methods employed in the research conducted, we would suggest that a stronger conclusion is warranted. More specifically, the null hypothesis that variation in sentence severity does not cause variation in crime rates should be conditionally accepted.[6]

In fact, the data on general deterrence which served as the basis for Professor Doob's inquiry is considered "relatively settled."[7] This data proves that general deterrence can be achieved since "there is *a connection* between criminal sanctions and criminal conduct." *Id*. But, there is also "insufficient evidence to support a direct correlation between higher penalties and a reduction in the crime rate." *Id*. In sum, studies have repeatedly shown that the severity of sanctions does not have a discernible impact on crime rate. Rather, they indicate that general deterrence does not actually require a "particularly burdensome penalty," but rather one that most would seek to avoid—which "could be satisfied by a fine or a short prison term." *Id*. at 1205.

Mr. Stafford is also fully aware that the sentence imposed must take into account the need to protect the public from further crimes. Mr. Stafford has no prior criminal record. He respectfully submits that in light of the lengthy period of incarceration which he is facing and his removal from the public for this significant period of time, the public shall be protected from any further crimes of Mr. Stafford. He notes that he will additionally be on a period of Supervised Release with the United States Probation Office after he is released from custody.

### B. Mr. Stafford needs—and openly welcomes—mental health and sex offender treatment

As detailed in the Presentence Investigation Report, Mr. Stafford is in desperate need of mental health and sex offender treatment. PSR ¶¶ 39, 44-45, and 48.

---

[6] Anthony N. Doob & Cheryl M. Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crimr & Just. 143, 187 (2003).

[7] Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1202 (2014).

Mr. Stafford fully understands the need for the sentence imposed to provide him "with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). With that in mind, Mr. Stafford is anticipating and fully prepared to take complete advantage of every rehabilitative opportunity afforded to him while in custody. Mr. Stafford is—without question— in need of and open to mental health and sex offender treatment, and any educational and vocational treatment as deemed necessary.

## CONCLUSION

Giving full consideration to the facts and argument above, Mr. Stafford respectfully requests that this Honorable Court impose a sentence of sixty months as well as access to the treatment that he requires and desires. Any sentence in excess of sixty months would be greater than necessary to achieve the public policy purposes of sentencing. Mr. Stafford also respectfully requests that this Honorable Court place in the Judgment Order a recommendation that Mr. Stafford serve his sentence as close to the Commonwealth of Virginia as possible.

Respectfully submitted:

XAVIER STAFFORD

By:＿＿＿＿＿＿＿／s／＿＿＿＿＿＿＿
Of counsel

Kirsten R. Kmet
Assistant Federal Public Defender
Attorney for Xavier Stafford
Virginia State Bar No. 47786
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: (757) 457-0850
Facsimile: (757) 457-0880
Email: kirsten_kmet@fd.org

## CERTIFICATE OF SERVICE

I certify that on the 29th day of November 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

I will also email a copy of this filing to the following non-ECF user :

    Kalyn M. Monreal
    United States Probation Officer
    600 Granby Street, Suite 200
    Norfolk, VA 23510
    Telephone :  (757) 222-7312

By:_____/s/_____
    Kirsten Renee Kmet
    Virginia State Bar No. 47786
    Assistant Federal Public Defender
    Attorney for Xavier Stafford
    Office of the Federal Public Defender
    500 East Main Street, Suite 500
    Norfolk, Virginia 23510
    Telephone:  757-457-0850
    Facsimile:  757-457-0880
    Email:  kirsten_kmet@fd.org